UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULA CALTRIDER,

   Plaintiff,            Case No.

v.

                   Hon.

TEVA PHARMACEUTICAL
INDUSTRIES LTD.,

   Defendant.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorney for Plaintiff*
340 Beakes St. STE 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the Complaint.

### **COMPLAINT AND JURY DEMAND**

Plaintiff Paula Caltrider ("Plaintiff"), by and through her attorneys, HURWITZ LAW PLLC, states the following for her Complaint against Defendant Teva Pharmaceutical Industries Ltd. ("Defendant"):

### **INTRODUCTION**

1. There is no pandemic exception to the protections afforded by the Americans with Disabilities Act (the "ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), or The Michigan Elliott-Larsen Civil Rights Act of 1976 (the "ELCRA"), MCL 37.2101, *et seq*. Defendant clearly did not understand this when it denied Ms. Caltrider religious and medical exemptions to Respondent's COVID-19 vaccine requirement. Instead of engaging with Ms.

1

Caltrider in the spirit of "bilateral cooperation," Defendant violated the ADA, Title VII, and the ELCRA by terminating Ms. Caltrider based on a purported "undue hardship" even though Ms. Caltrider posed no health threat to her coworkers that could not be mitigated by all safety measures that were put in place during the worst times of the pandemic.

## PARTIES AND JURISDICTION

2. Plaintiff is an individual residing in Haslett, Michigan.

3. Defendant is an international organization with a principal place of business in the United States located at Parsippany-Troy Hills, New Jersey.

4. Plaintiff's claims arise out of Defendant's violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Americans with Disabilities Act of 1991 42 U.S.C. § 12102(1).

5. This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6. This matter is not subject to arbitration.

7. Venue is proper under 28 U.S.C. § 1391 because this is the judicial district where a substantial part of the events giving rise to the claims occurred.

8. Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination alleging religious discrimination and retaliation on April 15, 2022.

9. Plaintiff received her Right to Sue letter from the EEOC in the past 90 days.

## FACTUAL ALLEGATIONS

10. Plaintiff was employed by Defendant as a Professional Sales Specialist for until her termination effective February 7, 2022.

### Defendant's Mandatory Vaccine Policy

11. Defendant announced a mandatory COVID-19 vaccine policy for its employees.

2

12. Defendant failed to mention in its multiple memorandums regarding the mandate that requesting religious or medical accommodations is a protected legal right for employees.

13. Defendant required that all employees be fully vaccinated against COVID-19 by November 8, 2021.

**Plaintiff's Religious and Medical Accommodation Request**

14. Plaintiff seeks to make all decisions, especially those regarding vaccination and other medical decisions, through prayer.

15. After Plaintiff was hired and credentialed, her physician submitted a letter on her behalf stating that she was unable to get the flu shot.

16. The credentialing department accepted it into the system and Plaintiff was accommodated immediately without Defendant or a third party contacting her physician.

17. After the COVID-19 mandate was announced, on November 16, 2021, Plaintiff submitted a religious exemption request for the COVID-19 vaccine, as she believes that her sincerely held religious beliefs would be violated if she received the vaccine.

18. Plaintiff also submitted a medical accommodation request as her disability constrains her from receiving the COVID-19 vaccine.

19. Plaintiff submitted a letter from her physician to inform Defendant that she was medically advised not to receive the vaccine.

20. Rather than taking the word of Plaintiff's doctor, Defendant had an individual call Plaintiff to evaluate her medical accommodation request.

21. This individual represented a third party, WorkForce, on Defendant's behalf.

22. This individual failed to listen to Plaintiff about her disability and need for an accommodation. Instead, she told Plaintiff that everyone should receive a vaccination and that

people die without it.

23. Plaintiff promptly sent an email to her human resources representative, Bill Corbett, and filed an incident report to the hotline.

24. Mr. Corbett forwarded the email Plaintiff wrote in confidence to the individuals who comprised the panel that made accommodation decisions.

25. On or about November 19, 2021, Defendant's director of North America human resources, Linda Misialek, called Plaintiff and instructed her not to respond to or sign the HIPPA consent form that was provided to her, and that she was looking for a solution for Plaintiff when she returned to work.

26. Plaintiff requested that Defendant name the physician that she spoke to so she could report the physician to the state's medical board for harassment. This request was ignored.

27. Additionally, Ms. Misialek informed Plaintiff that Defendant was not going to accept any religious exemptions that were submitted.

28. On December1, 2021, Plaintiff returned to work from medical leave.

29. Ms. Misialek never followed up with Plaintiff.

30. Plaintiff then reported this interaction to Defendant's hotline. She did not receive a substantive response.

31. On January 31, 2022, Plaintiff received a letter from Mr. Corbett, stating "Based on the fact you did not sign and return your HIPPA form as requested on would not be affected, [she] would be open to take the vaccine."

32. Plaintiff's doctor would not sign the HIPPA as she believed her letter was sufficient.

33. Mr. Corbett sent Plaintiff an email on February 1, 2022 to inform Plaintiff that if

4

she did not receive the vaccine, her last day of employment would be February 4, 2022.

34. Defendant failed to continuously engage in the interactive process with Plaintiff regarding her medical accommodation request.

35. Plaintiff, maintaining both her sincerely held religious beliefs and following her physician's medical advice, did not receive the vaccine, and was subsequently terminated on February 7, 2022.

36. Defendant refused to provide Plaintiff's any specific reason for its denial of her religious and medical accommodation requests and failed to answer any of her questions regarding their determination. Defendant simply stated the sincerely held religious beliefs were accepted, but it would not accommodate Plaintiff.

37. The religious accommodation process mandates "bilateral cooperation" between employer and employee. *Ansonia Bd. of Educ. v. Philabrook*, 479 U.S. 60, 69 (1986).

38. No such "bilateral cooperation" occurred during Defendant's interrogation of its employees or otherwise during the process.

39. The United States Equal Employment Opportunity Commission tells employers that a prototypical example of reasonable accommodation to the vaccine is being "given the opportunity to telework." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021). "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*. (Mar. 1, 2022).

40. Plaintiff was an excellent performer of her job duties.

41. Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

5

42. The U.S. Equal Employment Opportunity Commission ("EEOC") advises employers to "ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

43. An individual's testimony about his or her belief "must be given great weight" and is enough to demonstrate a sincerity. *Seeger*, 380 U.S. at 184 (1965).

44. Plaintiff's religious conviction is highlighted by the fact she remained unvaccinated in the face of termination, losing her livelihood in the process.

### Defendant Did Not Base Its Decision on Undue Hardship, Nor Could It Establish Undue Hardship

45. Pursuant to Title VII, the prohibition against religious discrimination imposes an affirmative duty on employers to reasonably accommodate the religious observances and practices of its employees, unless the employer can demonstrate that such an accommodation would cause undue hardship to the conduct of its business. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

46. "The obligation to provide religious accommodations absent undue hardship is a continuing obligation that allows for changing circumstances." Guidance at L.6.

47. Defendant bears the burden to show "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir.1978); *see also Baz v. Walters*, 782 F.2d 701, 706 (7th Cir.1986); *Redmond v. GAF Corp.*, 574 F.2d 897, 901 (7th Cir.1978); *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1512 (9th Cir.1989).

48. In the instant case, Defendant cannot show undue hardship. To date, Defendant has not stated why granting Plaintiff an accommodation poses an undue hardship.

49. Defendant has not explained its criteria for determining whether an accommodation poses an undue hardship.

50. An employer does not satisfy its burden "merely by showing that an accommodation would be bothersome to administer." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975).

51. Without a proffered explanation as to why Defendant would endure undue hardship to accommodate Plaintiff individually, Defendant relies on hypothetical hardships by default.

52. "A claim of undue hardship cannot be supported by merely conceivable or hypothetical hardships; instead, it must be supported by proof of actual imposition on co-workers or disruption of the work routine." *Townley Eng'g & Mfg. Co.*, 859 F.2d at 615 (9th Cir. 1988).

53. "An employer cannot rely on speculative or hypothetical hardship when faced with an employee's religious objection but, rather, should rely on objective information." Guidance at L.3.

54. Defendant's actions demonstrate a motive to avoid granting religious accommodations. "[A]n employer who acts with the motive of avoiding accommodation may violate Title VII even if [it] has no more than an unsubstantiated suspicion that accommodation would be needed." *Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773, 135 S. Ct. 2028, 2033, 192 L. Ed. 2d 35 (2015).

### COUNT I
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.
### Religious discrimination – Failure to accommodate

55. Plaintiff restates the foregoing paragraphs as set forth fully herein.

56. At all times relevant hereto, Plaintiff was an employee and Defendant was her employer for the purposes of 42 U.S.C. § 2000e, *et seq*.

57. Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e *et seq*., makes it unlawful for an employer to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee or prospective employee.

58. Title VII prohibits an employer from discriminating against an employee "because of such individual's... religion." 42 U.S.C. § 2000e-2(a)(1).

59. This "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate an employee's... religious observance or practice without undue hardship on the conduct of the employer's business." *Id*. § 2000e(j).

60. After receiving an accommodation request, "the employer is obligated by law to engage in interactive process – a meaningful dialogue with the employee[.]" *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

61. The employer must act in "good faith," *Id*., and the employee must "make a good faith attempt to satisfy his needs through means offered by the employer," *Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 146 (5th Cir. 1982).

62. Title VII makes it unlawful for an employer to retaliate against an employee who engaged in protected activity.

63. Plaintiff holds sincere *bona fide* religious beliefs that preclude her from receiving a COVID-19 vaccine.

64. Plaintiff informed Defendant of those beliefs and requested religious accommodation from the vaccine mandate.

65. Defendant refused to engage in the interactive process with Plaintiff regarding her religious accommodation requests.

66. Under Title VII, Plaintiff can establish a *prima facie* case of religious discrimination based on a failure to accommodate by showing: (1) she has a *bona fide* religious belief that conflicts with an employment requirement; (2) about which she informed the [Defendant]; and (3) she suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

67. Multiple accommodations could have been offered to Plaintiff. They include mask wearing and periodic testing for COVID-19—the very same accommodations being offered to virtually every public and private employee in the State of Michigan.

68. A "[r]easonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).

69. Defendant would not suffer undue hardship by granting Plaintiff an accommodation. 42 U.S.C. § 2000e(j).

70. The issue became moot when Defendant failed to engage each employee in "a meaningful dialogue" about the accommodation request and learn whether an acceptable accommodation would impose undue hardship. *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

71. Instead, Defendant announced a one-size-fits all approach to accommodation that deprived Plaintiff of the conversation necessary to discover what accommodations were possible. *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996) ("courts should look for signs of failure to participate in good faith or failure by one of the parties to help

9

the other party determine what specific accommodations are necessary" and "[a] party that fails to communicate... may also be acting in bad faith").

72. Irrespective of the interactive process, Defendant failed to provide Plaintiff with reasonable accommodations for her religious beliefs.

73. Defendant thereby discriminated against Plaintiff because of her religious beliefs.

74. Defendant's failure to provide religious accommodations has harmed and will continue to harm Plaintiff.

75. As a direct and proximate result of Defendant's violation of Title VII Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

76. As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been denied employment and placed in financial distress and have suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

77. By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

**COUNT II**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.**
**DISPARATE TREATMENT DISCRIMINATION**

78. Plaintiff restates the foregoing paragraphs as set forth fully herein.

79. "To assert a successful claim of religious discrimination . . . a plaintiff must either

present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) they were a member of a protected class, (2) they experienced an adverse employment action (3) they were qualified for the position, and (4) they were replaced by a person outside of the protected class or were treated differently than similarly situated employees." Tepper v. Potter, 505 F.3d 508, 515 (6th Cir. 2007).

80. Plaintiff espoused religious beliefs and is therefore a member of a protected class.

81. Defendant directly discriminated against Plaintiff by terminating them after they stated their sincerely held religious beliefs that conflicted with Defendant's subjected standard of religiosity.

82. Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

83. It is undisputed that Plaintiff was qualified for the position.

84. Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite not being vaccinated.

85. Plaintiff was terminated and replaced with a person of different religious beliefs.

86. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of her requests, and will so suffer in the future.

### COUNT III
### VIOLATION OF ELCRA, MCL 37.2101, *et seq.*
### <u>DISPARATE TREATMENT AND INTENTIONAL DISCRIMINATION</u>

87. Plaintiff restates the foregoing paragraphs as set forth fully herein.

88. Plaintiff holds sincere religious beliefs that conflict with Defendant's COVID-19 vaccine mandate.

11

89. Plaintiff informed Defendant how these sincerely held religious beliefs conflicted with Defendant's COVID-19 vaccine mandate.

90. "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a *prima facie* case of indirect discrimination by showing that the employee (1) was a member of a protected class; (2) experienced an adverse employment action; (3) was qualified for the position; and (4) was replaced by a person outside of the protected class or that the employee was treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

91. Defendant directly discriminated against Plaintiff based on termination after the employee espoused sincerely held religious beliefs that conflicted with Defendant's policy.

92. Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

93. Plaintiff's sincerely held religious beliefs qualify the employee as a member of a protected class.

94. Defendant placed Plaintiff on unpaid suspension before ultimately terminating Plaintiff.

95. Plaintiff was qualified for the position.

96. Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite being unvaccinated.

97. Plaintiff was terminated and replaced with a person of different religious beliefs.

98. Defendant also terminated Plaintiff based on Defendant's own subjective standard of religiosity, thus directly discriminating against Plaintiff's unique sincerely held spiritual beliefs.

99. EEOC Guidance states that ("[t]he definition of 'religion' under Title VII protects

both traditional and nontraditional religious beliefs . . . including those that may be unfamiliar to employers.")

100. The law on religious discrimination states that religious beliefs need not be "acceptable, logical, consistent or comprehensible to others" and the law "leaves little room for a party to challenge the religious nature of an employee's professed beliefs."). *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002).

101. Defendant defied the law when it determined that some religious beliefs of its employees were valid and while others were bogus.

102. In discovery, Plaintiff will be able to investigate which types of religious beliefs Defendant found were acceptable and which types of religious beliefs Defendant discriminated against, thereby establishing evidence probative of discriminatory intent.

103. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the termination and will so suffer in the future.

## COUNT IV
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## DISABILITY DISCRIMINATION–DISCRIMINATION AND RETALIATION

104. Plaintiff restates the foregoing paragraphs as set forth fully herein.

105. Plaintiff had a "disability" as defined in 42 U.S.C. § 12102(1).

106. Plaintiff was regarded as having a disability under 42 U.S.C. § 12102(3)(A).

107. Plaintiff submitted a letter from her physician to Defendant which stated that she was medically advised not to receive the vaccine and that she needed a medical accommodation.

108. Defendant was legally required to engage Plaintiff in an interactive process before

terminating her.

109. Defendant failed to continually engage in an interactive process with Plaintiff following the end of her short-term accommodation.

110. Defendant discriminated against Plaintiff on account of her "actual or perceived" disability when she was terminated on June 20, 2022.

111. Defendant's actions were knowing and willful.

112. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result.

113. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of the violation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a. Compensatory damages for monetary and non-monetary loss;

b. Exemplary and punitive damages;

c. Prejudgment interest;

d. Attorneys' fees and costs; and

e. Such other relief as in law or equity may pertain.

Respectfully Submitted,

HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)

Attorney for Plaintiff
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
*noah@hurwitzlaw.com*

Dated: May 23, 2023

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PAULA CALTRIDER,

   Plaintiff,             Case No.

v.

                      Hon.

TEVA PHARMACEUTICAL
INDUSTRIES LTD.,

   Defendant.

---

Noah S. Hurwitz
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

---

## **DEMAND FOR TRIAL BY JURY**

  Plaintiff, Paula Caltrider, by and through her attorneys, Hurwitz Law PLLC, hereby demands a trial by jury in the above-captioned matter for all issues triable.

                    Respectfully Submitted,
                    HURWITZ LAW PLLC

                    */s/ Noah S. Hurwitz*
                    Noah S. Hurwitz (P74063)
                    *Attorney for Plaintiff*

Dated: May 23, 2023